UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Case No. SA CR 05-293(A)-CJC Date November 20, 2006

Present: The Honorable CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE

Interpreter

| Sandra Eagle | ~~Maria Dellaneve~~ | Gregory Staples<br>Deirdre Eliot |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 1) CHI MAK, aka Taichi Mak, aka Daichi Mak | | | | Marilyn E. Bednarski<br>Ronald Kaye | | | X<br>X |
| 2) REBECCA LAIWAH CHIU, | | | | Stanley I. Greenberg | | | X |
| 3) TAI WANG MAK, aka Taihong Mak | | | | John D. Early | | X | |
| 4) FUK LI, aka Lilly, aka Lili, aka Flora | | | | C. Thomas McDonald | | X | |
| 5) YUI MAK, AKA Billy Yui Mak, aka Mak Yui | | | | Thomas Wolfsen | | X | |

**Proceedings:** **(IN CHAMBERS) ORDER DENYING DEFENDANT'S MOTION TO COMPEL** [filed 08/21/06] **AND DEFENDANT'S MOTION TO SUPPRESS** [filed 08/23/06]

Defendant Chi Mak[1] filed two motions regarding the government's use of evidence obtained during electronic surveillance conducted pursuant to the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1801 *et seq*. Specifically, Mr. Mak seeks to compel production of the FISA applications, orders, and related material. He also seeks suppression of all information obtained from the FISA surveillance, on grounds that the statute is unconstitutional, that the applications do not establish probable cause for the surveillance, that the applications contain intentional or reckless material falsehoods or omissions, that the government failed to obtain the required certifications, or that the minimization procedures in place were either inadequate or not followed. Mr. Mak's motions are DENIED.

NOV 2 2 2006

**FISA Structure**

FISA permits federal officials to obtain orders authorizing surveillance for the purpose of

[1] These motions have also been joined by Defendants Tai Mak, Yui Mak, Rebecca Chiu, and Fuk Li. The Court's ruling applies to all defendants.

298

obtaining foreign intelligence information. *See* 50 U.S.C. § 1802(b); *United States v. Duggan*, 743 F.2d 59, 77 (2nd Cir. 1984). The statute established a Foreign Intelligence Surveillance Court ("FISC") that has jurisdiction to hear applications for and to grant orders approving electronic surveillance. FISA contains detailed procedures that must be followed in order to obtain a surveillance order from the FISC. The procedures are designed to ensure that when the Executive Branch gathers foreign intelligence information, it does so "without violating the rights of the citizens of the United States." *United States v. Hammond*, 381 F.3d 316, 332 (4th Cir. 2004) (en banc), *vacated on other grounds*, 543 U.S. 1097 (2005), *reinstated in pertinent part*, 405 F.3d 1034 (4th Cir. 2005).

The procedure begins with the government's filing of an application for surveillance with the FISC. All applications must be made by a Federal officer upon oath or affirmation after approval by the Attorney General and must include certain specified information. 50 U.S.C. § 1804(a). If necessary, the FISC judge reviewing the application may require the government to submit additional information in order to make the requisite findings under § 1805(a). Upon reviewing the application, the FISC judge may enter an *ex parte*, under seal order granting the application for surveillance only if certain findings are made. 50 U.S.C. § 1805(a). The most important of these findings are that there is probable cause to believe that the target of the surveillance is an agent of a foreign power and that the facilities or places at which the surveillance is directed are being used or will be used by an agent of a foreign power. 50 U.S.C. § 1805(a)(3). "Agent of a foreign power" is a term of art in the statute, and means, among other things, any person who knowingly engages, or knowingly aids or abets someone in engaging, in clandestine intelligence activities for or on behalf of a foreign power, which activities involve or may involve a violation of United States criminal law. 50 U.S.C. §§ 1801(b)(2)(A), (E).

The order issued by the FISC judge approving the surveillance must describe the target, the information sought, the means of acquiring the information, and the period of time for which the surveillance is approved. 50 U.S.C. § 1805(c)(1). The applicable time period is generally the shorter of ninety days or until the objective of the surveillance has been realized. 50 U.S.C. § 1805(e)(1). Applications for renewal of the order must be made on the same basis as the original application, and require the same findings by the FISC judge. 50 U.S.C. § 1805(e)(2). The FISC judge must also direct that the minimization procedures proposed by the government be followed during the surveillance. 50 U.S.C. § 1805(c)(2). FISA requires that all applications contain specific procedures to minimize the acquisition and retention, and prohibit the dissemination, of nonpublicly available information obtained during the surveillance. 50 U.S.C. § 1801(h)(1).[2]

Though FISA is primarily concerned with foreign intelligence surveillance, it permits the use of evidence obtained through electronic surveillance in criminal proceedings, provided the Attorney General gives advance authorization. 50 U.S.C. § 1806(b). Before any such evidence may be

---

[2] This provision contains an exception allowing for "the retention and dissemination of information that is evidence of a crime which has been, is being, or is about to be committed and that is to be retained or disseminated for law enforcement purposes." 50 U.S.C. § 1801(h)(3).

introduced during the criminal process, the government must provide notice to the "aggrieved person" and to the court in which the evidence is to be introduced. 50 U.S.C. § 1806(c).[3] The aggrieved person may move to suppress the evidence if the information was obtained unlawfully or if the surveillance was not performed in accordance with the terms of the FISC order. 50 U.S.C. § 1806(e).

Once a suppression motion has been made, the Attorney General may file an affidavit asserting that disclosure of the FISA applications, orders, and related materials would harm the national security of the United States. 50 U.S.C. § 1806(f). If such an affidavit is filed, the district court reviews *in camera* and *ex parte* the applications, orders, and other materials to determine whether the surveillance was lawfully authorized and conducted. *Id.* The district court may disclose the FISA applications, orders, and other materials, or portions thereof, "only where such disclosure is necessary to make an accurate determination of the legality of the surveillance." *Id.* Even where disclosure is necessary, it must be made pursuant to appropriate security procedures and protective orders. *Id.* After *in camera* review, if the court determines the surveillance is lawfully authorized, it shall deny the suppression motion except to the extent that due process requires discovery or disclosure. 50 U.S.C. § 1806(g).

**Motion to Compel**

Mr. Mak seeks to compel production of the FISA applications, orders, and related materials on the grounds that disclosure is necessary for an accurate determination of legality under § 1806(f) and that due process requires disclosure under § 1806(g). As to the § 1806(f) necessity argument, Mr. Mak argues that the Court will be unable to accurately determine the legality of the FISA surveillance without the assistance of his participation in an adversarial hearing. According to Mr. Mak, the sheer volume of the surveillance gathered by the government makes it unrealistic to expect that the Court will, on its own, be able to perform an adequate assessment of the legality of the applications and orders.

Mr. Mak's argument is one commonly raised, yet never granted, in cases involving evidence obtained through FISA surveillance. Courts reject this argument primarily because the language of § 1806(f) "clearly anticipates that an *ex parte, in camera* determination is to be the rule." *United States v. Belfield*, 692 F.2d 141, 147 (D.C. Cir. 1982). Disclosure is only necessary where "the court's initial review of the application, order, and fruits of the surveillance indicates that the question of legality may be complicated by factors such as 'indications of possible misrepresentation of fact, vague identification of the persons to be surveilled, or surveillance records which include a significant amount of nonforeign intelligence information, calling into question compliance with the minimization standards contained in the order.'" *Id.* (*quoting* S. Rep. No. 95-701, 95th Cong., 2d Sess. 64 (1978)). The Court engaged in a thorough and exhaustive review of the FISA material, and found none of the

[3] An "aggrieved person" is one who is the target of electronic surveillance or whose communications or activities were otherwise subject to electronic surveillance. 50 U.S.C. § 1801(k).

above factors present. Instead, the targets of the surveillance were clearly identified, the facts justifying surveillance were amply supported by the available materials and certified by responsible officials, and the information retained is well within the bounds set by the minimization procedures. *See id.* Accordingly, disclosure is not necessary under § 1806(f).

Nor is Mr. Mak deprived of due process by an *in camera*, *ex parte* review of the FISA material. Due process does not require "an adversary proceeding and full disclosure for resolution of every issue raised by an electronic surveillance." *Taglianetti v. United States*, 394 U.S. 316, 317 (1969) (*per curiam*). Adversary proceedings are required only when the *in camera* procedures at issue are inadequate to safeguard the defendant's Fourth Amendment rights. *Id.* Here, the *in camera* review called for by FISA is the result of careful and thoughtful congressional balancing of the vital national security interest in obtaining foreign intelligence information against the equally vital liberty and privacy interests protected by the Fourth Amendment. In striking the appropriate balance, "Congress has a legitimate interest in authorizing the Attorney General to invoke procedures designed to ensure that sensitive security information is not unnecessarily disseminated to *anyone* not involved in the surveillance operation in question." *United States v. Ott*, 827 F.2d 473, 477 (9th Cir. 1987) (emphasis in original). The procedures provided by Congress in FISA for review of surveillance orders assure the protection of a defendant's Fourth Amendment rights, and satisfy the requirements of due process.

**Motion to Suppress**

Mr. Mak also seeks the suppression of all evidence obtained during the FISA surveillance on several grounds. First, he argues that the statute itself, as amended by the USA PATRIOT Act,[4] is unconstitutional because it allows for surveillance for the primary purpose of discovering criminal activity to be conducted without a warrant based on criminal probable cause so long as the surveillance also has foreign intelligence gathering as a significant purpose. He further argues that even if the statute is constitutional, the surveillance was illegal because the applications do not establish probable cause for the surveillance, the applications contain intentional or reckless material falsehoods or omissions, the government failed to obtain the required certifications, and the minimization procedures in place were either inadequate or not followed. The Court will consider these arguments in turn.

First, the Court agrees with courts in all other circuits in finding FISA constitutional. As noted above, the statute represents a carefully drawn balance between the national security of our country and

---

[4] The USA PATRIOT Act amended FISA to alter the certification required by the executive branch as to the purpose of the surveillance. Prior to 2001, the executive was required to certify that "the purpose" of the surveillance was foreign intelligence. *See United States v. Johnson*, 952 F.2d 565, 572 (1st Cir. 1991) (citing prior version of FISA). Courts consistently interpreted this provision as requiring that foreign intelligence be the "primary purpose" of FISA surveillance. *See id.* The USA PATRIOT Act amended FISA to allow for surveillance orders to issue so long as the executive branch certifies that foreign intelligence is "a significant purpose" of the surveillance. *See* Pub. L. No. 107-56, § 218, 115 Stat. 272, 291 (Oct. 26, 2001) (*codified at* 50 U.S.C. §§ 1804(a)(7)(B), 1805(a)(5), 1823(a)(7)(B), 1824(a)(5)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

the privacy and liberty interests of citizens. The "primary purpose"/"significant purpose" distinction that is the centerpiece of Mr. Mak's argument is of little relevance as applied to this case. When investigating alleged disclosure of state secrets, the criminal and intelligence purposes of the surveillance are of equal importance and are indistinguishable. Indeed, the government could establish probable cause to investigate Mr. Mak for one of the crimes with which he has been charged – failure to register as a foreign agent – by satisfying the FISA requirement that it show probable cause that Mr. Mak was an "agent of a foreign power." Nor are mandatory disclosure provisions, like those contained in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2521, necessary to save FISA from "constitutional infirmity." *Belfield*, 692 F.2d at 148. The foreign intelligence field is fundamentally different from domestic criminal surveillance and implicates important national security interests. In the foreign intelligence context, "Congress recognized the need for the Executive to engage in and employ the fruits of clandestine surveillance without being constantly hamstrung by disclosure requirements." *Id.* FISA protects the Fourth Amendment rights of individuals not through disclosure but "through its provisions for in-depth oversight of FISA surveillance by all three branches of government." *Id.* As applied in this case, the procedures set down by Congress, adhered to by the Executive, and reviewed by two federal courts have more than adequately protected Mr. Mak's Fourth Amendment rights.[5]

The Court next turns to whether the procedures set forth in FISA were properly followed in this case. Mr. Mak first argues that the government failed to establish probable cause that he was an agent of a foreign power. The Court has reviewed all FISA applications, orders, and related materials, and there is substantial evidence to support the FISC judge's conclusion that there was probable cause that Mr. Mak was an agent of a foreign power. Given the affidavit submitted by the Attorney General asserting a vital national security interest in the continued privacy of the FISA information, the Court makes no further public comment. *See United States v. Isa*, 923 F.2d 1300, 1304 (8th Cir. 1991).

Mr. Mak next argues that the government's applications contained knowing or reckless material misstatements or omissions that taint the FISA warrants. The Court found no material inconsistencies or misstatements anywhere in the FISA applications, nor is there any evidence to suggest that the government omitted material information that would have altered the FISC judge's determinations.

Mr. Mak's next claim is that the government failed to obtain the required certifications needed to authorize the surveillance. During the Court's review of the materials, it ensured that all certifications required by FISA were obtained by the government and presented to the FISC judge. No certifications were missing or deficient.

---

[5] Since FISA is constitutional as applied to the surveillance of Mr. Mak, his facial challenge to the constitutionality of the statute necessarily fails. *See United States v. Salerno*, 481 U.S. 739, 745 (1987) (holding that a "facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that *no set of circumstances exists* under which the Act would be valid") (emphasis added).

Finally, Mr. Mak argues that the surveillance exceeded the scope of the FISC order because it failed to follow the necessary minimization procedures. In assessing the minimization effort of the government, the court's role is to determine whether "on the whole, the agents have shown a high regard for the right of privacy and have done all they reasonably could to avoid unnecessary intrusion." *United States v. Thomson*, 752 F. Supp. 75, 80 (W.D.N.Y. 1990) (*citing United States v. Tortorello*, 480 F.2d 764 (2nd Cir. 1973), *cert. denied*, 414 U.S. 866 (1973)). The court must keep in mind that "no electronic surveillance can be so conducted that innocent conversations can be totally eliminated." *United States v. Bynum*, 485 F.2d 490, 500 (2nd Cir. 1973), *cert. denied*, 423 U.S. 952 (1975). Nor is the government required "to make an instantaneous identification of information acquired through a FISA authorized surveillance as unequivocally being foreign intelligence or else discarding it." *Thomson*, 752 F. Supp. at 81. Instead, the statute allows for the government to retain information, even information that does not appear to be independently "necessary," until its "full significance becomes apparent." H.R. Rep. No. 95-1283, 95th Cong., 2d Sess., pt. I at 58 (1978).

Here, the government obtained a substantial amount of information from its physical and electronic surveillance of Mr. Mak and his home. Much of this information required translation from Chinese into English. The Court has also been made aware that much of the information obtained through electronic surveillance suffers from poor recording quality, requiring substantial effort to determine what is being said. A substantial portion of the information obtained by the government relates to United States foreign intelligence interests. Moreover, in a case involving allegations of espionage, the government must be especially careful not to dismiss quickly information that at first appears innocuous or irrelevant, because its full significance cannot be properly assessed until the full body of information has been collected. The Court is satisfied that the government has exercised good faith in attempting to minimize the retention of non-public information obtained during surveillance of Mr. Mak. It has similarly been diligent in its efforts to discern and separate information that is relevant to foreign intelligence from information that is irrelevant. The government has complied with the general minimization requirements of FISA and the specific minimization procedures called for by the FISC surveillance order.

Initials of Deputy Clerk ______

cc: Counsel of Record, AUSA