

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>CHI MAK, et al.,<br>Defendant. | Case No.: SACR 05-293-CJC<br><br>ORDER DENYING DEFENDANT'S MOTION TO VACATE THE CONVICTION AND FOR NEW TRIAL |

# INTRODUCTION

On May 10, 2007, following a 25-day jury trial, Defendant Chi Mak was convicted on five counts: conspiracy to violate the Arms Export Control Act (the "AECA"), two counts of attempting to violate the AECA, operating as an agent of a foreign government in the United States, and lying to a federal agent. Mr. Mak now moves to vacate his conviction and for a new trial based on the government's failure to disclose alleged exculpatory evidence prior to the trial. This evidence relates to three of the five counts

on which he was convicted—one count of conspiracy to violate the AECA and two counts of attempting to violate the AECA. Specifically, the evidence relates to the issue of whether Mr. Mak violated the AECA by conspiring and attempting to export defense articles without first obtaining a license or written authorization from the United States Department of State. The Court finds that the government's failure to provide this evidence before trial does not constitute a *Brady* violation and does not provide grounds for vacating the conviction or granting a new trial.

## ANALYSIS

A week after Mr. Mak was arrested, his former supervisor at Power Paragon, Dr. Yuri Khersonsky, was interviewed by NCIS agents. The NCIS agents created a brief report summarizing their conversation with Dr. Khersonsky (the "Khersonsky Report"), which reveals that Dr. Khersonsky made the following statements: (1) Dr. Khersonsky worked with Mr. Mak for several years and he directly supervised Mr. Mak in 1994; (2) ninety percent of the work done by Power Paragon, Inc. ("Power Paragon") was for the Navy, most of it for surface ships; (3) the only submarine-related project that Mr. Mak worked on was the Hybrid Circuit Breaker, a project which required a clearance level; (4) the Hybrid Circuit Breaker technology was innovative but never completed because the Navy lost interest; (5) any work that was innovative at the time of its initial production had since become commonplace, such as the Teledyne T-110 and T-150, technologies which can be found on the Internet; (6) the technology is "old stuff" which was used in Navy ships that have since been sold to foreign navies; (7) the Advanced Motor Drive Program that Mr. Mak worked on was "ten years old" and more "sophisticated solutions" exist now"; (8) Power Paragon prohibited employees from taking any work documents home, regardless of the classification level; and (9) Dr. Khersonsky stated that he had never seen Mr. Mak take any work home and described him as a "reliable worker." (Motion to Dismiss, Ex. A.)

At a hearing on the previous motion for a new trial, held on January 7, 2008, Dr. Khersonsky testified regarding his interview with NCIS agents. He testified that he told the agents that all of the papers he had presented at conferences were in the public record. Mr. Mak asserts that he was not aware of Dr. Khersonsky's interview with NCIS agents or of the existence of the Khersonsky Report until the January 7, 2008 hearing. Mr. Mak argues that the government's failure to provide the Khersonsky Report to defense counsel prior to trial constitutes a *Brady* violation that merits a new trial because the Khersonsky Report and Dr. Khersonsky's testimony regarding this interview were material and exculpatory.

In order to establish a *Brady* violation, a defendant must prove three elements. First, the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching. *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). Second, the defendant must show that the government suppressed the evidence, either willfully or inadvertently. *United States v. Agurs,* 427 U.S. 97, 110 (1976). Finally, the defendant must show that prejudice resulted. *Strickler,* 527 U.S. at 282. Here, only the third prong is truly at issue.[1] In order to show prejudice, Mr. Mak must demonstrate that the statements were material to his innocence or guilt. *United States v. Bagley,* 473 U.S. 667, 676-78 (1985). "The touchstone of materiality review is whether the admission of the suppressed evidence would have created a 'reasonable probability' of a different result." *United States v. Jernigan,* 492 F.3d 1050, 1053 (9th Cir. 2007) (citing *Kyles v. Whitley,* 514 U.S. 419, 434 (1995)). "A defendant need not show that he would more likely than not have received a different verdict with the evidence," but only that "the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.* at 1054 (citations omitted). In determining whether the failure to disclose the evidence undermined confidence in the outcome of the trial, the court must analyze

---

[1] The Court presumes Mr. Mak can establish the first and second prongs of a *Brady* violation.

1  the withheld evidence "in the context of the entire record." *Id.* (citations omitted).
2  Additionally, the materiality of the withheld evidence must be analyzed cumulatively
3  rather than item by item. *Barker v. Fleming*, 423 F.3d 1085, 1094 (9th Cir. 2005) (*citing*
4  *Kyles v. Whitley*, 514 U.S. 419, 436 (1995)). Here, the Court considers the cumulative
5  effect of the two pieces of evidence at issue—the Khersonsky Report and Dr.
6  Khersonsky's theoretical testimony as reflected in that document.

8  Mr. Mak argues that Dr. Khersonsky's testimony regarding the contents of his
9  interview is material because it would have corroborated Mr. Mak's defense that he was
10 permitted to present the materials on the disks in publicly-attended forums. He argues
11 that this evidence indicates Dr. Khersonsky believed the QED Document and the Solid-
12 State Document were within the public domain. Consequently, the evidence would
13 support Mr. Mak's defense that he also believed the documents were within the public
14 domain and thus he lacked the specific intent to violate the AECA. Additionally, Mr.
15 Mak argues that Dr. Khersonsky's testimony would have undermined the confidence in
16 the outcome of the trial because it would have rebutted the testimony of the government
17 witness Cindy Baleno, the export control coordinator of Power Paragon, who testified
18 that there were clear procedures for publicly presenting materials similar to the
19 documents at issue in this case.

21 The failure of the government to disclose the Khersonsky Report and Mr. Mak's
22 missed opportunity to request that Dr. Khersonsky testify regarding the document in no
23 way undermines the confidence in the outcome of the trial. Mr. Mak cannot make the
24 requisite showing of prejudice for several reasons: Dr. Khersonsky's testimony as
25 reflected in the Khersonsky Report was cumulative evidence, the jury was presented with
26 a mountain of evidence that demonstrated that Mr. Mak had the requisite intent to violate
27 the AECA, Dr. Khersonsky was not similarly situated to Mr. Mak for purposes of

equating their respective state of mind or culpable conduct, and Dr. Khersonsky voluntarily chose not to testify at trial.

With respect to the first issue, Dr. Lipo, Robert Lee, and Mr. Mak himself all testified at the trial that the documents at issue in this case contained information that was "open source" or that was no longer valuable. The Khersonsky Report includes a weaker version of this argument, since Dr. Khersonsky only stated that the Advanced Motor Drive program was "ten years old" and that "more sophisticated solutions exist now." Assuming Dr. Khersonsky would have testified that the QED Document and the Solid-State Document were in the public domain, this testimony would have merely repeated that of other witnesses. Where the suppressed evidence duplicates testimony already heard by the jury, its suppression does not undermine the confidence in the outcome of the trial. *See Barker v. Fleiming*, 423 F.3d 1085, 1099 (9th Cir. 2005) (no *Brady* violation where government failed to disclose dismissal of a residential burglary charge against a cooperating witness where jury heard that another burglary charge had been dismissed, another reduced, and a sentence commuted for the same witness); *United States v. Vgeri*, 51 F.3d 876, 880 (9th Cir. 1995) (evidence of witness's prior cooperation with law enforcement not material for *Brady* purposes where jury heard about witness's extensive cooperation with DEA). In Mr. Mak's case, the jury rejected the argument that the QED Document and Solid-State Document were "open source" and outdated, and therefore Dr. Khersonsky's cumulative testimony would not constitute new evidence that undermines the confidence in the outcome of the trial.

Moreover, the jury was presented with substantial evidence on which they properly relied to determine that Mr. Mak was guilty of the AECA charges. When deciding the materiality of suppressed evidence, judges must "undertake a careful, balanced evaluation of the nature and strength of both the evidence the defense was prevented from presenting and the evidence each side presented at trial. In other words, the withheld evidence must

be analyzed in the context of the entire record." *Jernigan*, 492 F.3d at 1054 (quotations and citations omitted.) Analyzing just a fraction of the evidence presented by the government at trial establishes the immateriality of Dr. Khersonsky's testimony as reflected in the Khersonsky Report. Specifically, the jury heard testimony that Mr. Mak was seen copying disks to give to his brother. They heard that police intercepted Mr. Mak's brother and sister-in-law at Los Angeles International Airport with an encrypted disk containing two export-controlled documents that Mr. Mak provided them to take to the People's Republic of China ("PRC"). The jury was also presented with evidence that when government agents searched Mr. Mak's home, they found documents containing military technology (including NOFORN and export-controlled documents), tasking lists, letters from PRC officials, and a code word list. When searching the home of Chi Mak's brother, Tai Mak, the agents found a code word list corresponding to the one found in Chi Mak's home, along with a custom-made encryption program and a DD(X) document that was encrypted and deleted two weeks before Chi Mak and his wife went to the PRC. During the search of Tai Mak's home, agents also recovered the laptop computer and encryption key that were used to encrypt the naval technology. Considering the totality of all the evidence presented at trial, Dr. Khersonsky's testimony as reflected in the Khersonsky Report simply does not undermine the confidence in the outcome of the trial.

Mr. Mak's argument that Dr. Khersonsky's testimony as reflected in the Khersonsky Report would have demonstrated that Mr. Mak lacked the requisite intent to violate the AECA is also unavailing because Dr. Khersonsky and Mr. Mak are not similarly situated for purposes of equating their respective state of mind and culpable conduct. Dr. Khersonsky presented a paper concerning export-controlled technology at an international conference without obtaining prior approval to do so. He was not an agent of the PRC who passed sensitive naval technology to that country.

Finally, Mr. Mak's argument that Dr. Khersonsky's testimony as reflected in the Khersonsky Report would have been material and exculpatory ignores the fact that Dr. Khersonsky invoked his Fifth Amendment privilege during Mr. Mak's trial. In invoking his Fifth Amendment rights, Dr. Khersonsky voluntarily chose to protect himself from making any incriminating statements rather than to testify on behalf of Mr. Mak. The Court does not see how the Khersonsky Report would have impacted Dr. Khersonsky's decision not to testify at trial, even if Mr. Mak had been provided a copy of the Khersonsky Report prior to the trial.

## CONCLUSION

The government's failure to provide Mr. Mak with the Khersonsky Report prior to the trial in no way undermined the confidence in the jury's verdict and therefore his motion is DENIED.

DATED:   March 24, 2008

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE