**EXHIBIT 1**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>CHI MAK, et al.,<br><br>　　　　Defendant | Case No.: SACR 05-293-CJC<br><br>STATEMENT OF REASONS |

## I. INTRODUCTION

Defendant Chi Mak led a conspiracy to pass sensitive naval technology to the People's Republic of China (the "PRC"). In his public life, Mr. Mak appeared to be an upstanding American citizen who helped to develop sensitive technology for the United States Navy. Privately, however, Mr. Mak served as a covert agent of the PRC, using his employment position and security clearance in an effort to pass sensitive naval technology to the PRC. On May 10, 2007, Mr. Mak was convicted by a jury on five different counts: conspiracy to export defense articles in violation of 22 U.S.C. §§ 2778(b)(2) and (c), 22 C.F.R. §§ 127.1(a)(3) and 127.3 (count 1); attempted export of defense articles in violation of 22 U.S.C. §§ 2778(b)(2) and (c), 22 C.F.R. §§

127.1(a)(1) and 127.3 (counts 2 and 3); acting as an unregistered agent of a foreign government in violation of 18 U.S.C. § 951 (count 6); and making a false statement in violation of 18 U.S.C. § 1001 (count 11). Having fully considered the applicable advisory guideline sentencing range and sentencing factors contained in 18 U.S.C. § 3553(a), the Court hereby imposes a custodial sentence of 293 months, a sentence at the high end of the advisory guideline sentencing range. A high-end advisory guideline sentence is a just and fair punishment. Mr. Mak betrayed the United States. We entrusted him with our national security and the safety of our courageous men and women in the armed forces. He betrayed that sacred trust by being an agent of the PRC and attempting to pass sensitive naval technology to that country. To make matters worse, Mr. Mak lied to avoid prosecution and conviction. We will never know the full extent of the damage that Mr. Mak has done to our national security. A high-end advisory guideline sentence will provide a strong deterrent to the PRC not to send its agents here to steal American military secrets, and it will ensure that Mr. Mak will never attempt to pass any of our military secrets to the PRC again.

## II.  CALCULATION OF THE GUIDELINE RANGE

### A. Base Offense Level

"The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Thus, when imposing any sentence, the first step for a district court is to calculate the applicable advisory guideline range. *See United States v. Mohamed*, 459 F.3d 979, 985 (9th Cir. 2006). Pursuant to the Relevant Conduct advisory guideline, Mr. Mak is accountable for all acts that he committed, aided, or abetted and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable acts committed by others in furtherance of the jointly undertaken criminal

activity. *See* U.S.S.G. § 1B1.3(a)(1). All five counts on which Mr. Mak was convicted are grouped together because they involve the same victim, the United States, and are tied together by two or more acts connected by a common criminal objective, that is, a conspiracy to export defense articles to the PRC. *See* U.S.S.G § 3D1.2(b). When counts are grouped together pursuant to Section 3D1.2(b), the offense level is determined using the advisory guideline that results in the highest offense level. U.S.S.G. § 3D1.3(a). In this case, Count 6, acting as an unregistered agent of a foreign government, has the highest base offense level. Accordingly, the advisory guideline base offense level for Count 6 is used to determine the offense level. That base offense level is 30. *See* U.S.S.G. § 2M3.2(a)(2).

**B. Enhancements**

The Court must determine whether any adjustments or departures under the Guidelines should be applied to the base offense level. The Court believes three enhancements under the Guidelines apply here. Specifically, a four-level enhancement is warranted for Mr. Mak's aggravating role in the offense, a two-level enhancement is warranted for his abuse of a position of public or private trust, and a two-level enhancement is warranted for obstructing justice.

**1. Role in Offense**

To qualify for an aggravating role adjustment, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. *See* U.S.S.G. §§ 3B1.1, 3B1.2. Mr. Mak is the most culpable defendant in the conspiracy to pass export-controlled material to the PRC because he was the organizer and leader of the offense. Mr. Mak is the only defendant in this case who had access to the information sought by the PRC, which he obtained by virtue of a security clearance and

due to his position at Power Paragon, Inc. ("Power Paragon") as a senior engineer. In his role as leader of the conspiracy, Mr. Mak communicated with a contact in the PRC known as "Little Gu," received tasking lists from the PRC that enumerated the types of technologies that he was to obtain, collected the information, and selected which material to send to the PRC. Mr. Mak enlisted the help of his wife, brother, sister-in-law, and nephew to copy the information onto CD-Rom disks, encrypt the information and conceal its packaging, and transport the concealed information to the PRC. Mr. Mak admitted during his post-arrest interview with government agents on October 30, 2005, that it was his idea to pass the export-controlled information to the PRC, rather than that of his family members. Because Mr. Mak's co-defendants all played secondary roles in the conspiracy, acting at his direction, Mr. Mak is properly viewed as the organizer of the crime.

The offense level is increased four levels if the defendant was an organizer of criminal activity that involved five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(a). Here, the offense involved at least five criminally responsible participants, including the five named defendants and other unindicted coconspirators in the PRC. As a result, the base offense level is increased four levels for Mr. Mak's role in the offense.

**2. Abuse of Trust**

The offense level is increased two levels if the defendant abused a position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense. *See* U.S.S.G. § 3B1.3. A "position of public or private trust" is one characterized by substantial discretionary judgment that is ordinarily given considerable deference by others. *Id.* at Application Note 1. Persons holding such positions ordinarily are subject to significantly less supervision than employees with

1 | non-discretionary responsibilities. *Id.* In order for this adjustment to apply, the position
2 | of trust must have contributed in some significant way to the defendant's ability to carry
3 | out the offense or to conceal it. *Id.*

5 | In this case, Mr. Mak's security clearance and position as a senior electrical engineer at Power Paragon gave him critical access to the technology sought by the PRC, thereby providing him with the opportunity to commit the treasonous crimes. Mr. Mak used his position to provide his brother Tai Mak and his sister-in-law Fuk Li with copies of two export-controlled documents to deliver to the PRC. The documents were entitled "Solid-State and Power Switches for Source Transfer and Load Protective Functions" (the "Solid-State document") and "5 MW High Efficiency Quiet-Electric Drive Demonstrator" (the "QED document"). Although Mr. Mak was not convicted for passing military secrets to the PRC, he did admit during his post-arrest interview with government agents that he passed naval technology to the PRC over the years, such as the Electro Magnetic Aircraft Launch System for use in future Navy aircraft carriers, DC/DC Converters for Navy Submarines, the 5000 AMP DC Hybrid Breaker, the Autobus Transfer System, and the Aegis "Spy-1" Radar System. The substantial amount of technological material that Mr. Mak accessed through his work is evidenced by the fact that government agents found approximately 1000 documents in his house, which were responsive to the tasking lists he received from the PRC. Mr. Mak could not have accessed this sensitive naval technology but for the public and private trust Power Paragon and the United States placed in him. Because of Mr. Mak's position and security clearance, his colleagues and supervisors trusted and worked with him on confidential and, in some instances, classified projects. Mr. Mak's position of trust also allowed him to conceal his crimes from government officials longer than if he held a position with less discretionary judgment. For these reasons, Mr. Mak's abuse of trust merits a two-level enhancement.

### 3. Obstruction of Justice

The offense level may be increased two levels if the defendant willfully attempted to obstruct the administration of justice during the investigation, prosecution, or sentencing of the offense of conviction. U.S.S.G. § 3C1.1. Before a court may adjust a defendant's sentence for obstruction of justice, it must find that: (1) the defendant gave false testimony; (2) the testimony was on a material matter; and (3) defendant had "willful intent" to provide false testimony. *United States v. Jiminez-Ortega*, 472 F.3d 1102, 1103 (9th Cir. 2007) (*citing United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). All three elements are met here. During trial, Mr. Mak testified that he did not know that Tai Mak was going to encrypt the files that Chi Mak delivered to him, which were found in Tai Mak's possession at Los Angeles International Airport. Yet the transcript of Chi Mak's conversation with his wife on their drive home after delivering the disks reveals that Chi Mak was aware of the planned encryption. Chi Mak said that "[i]t is good that I made three CDs this morning for him/her to take to Little Gu." His wife replied, "[h]e/she said that he/she still needs to work on them further." Chi Mak responded, "[h]e/she has to encrypt them."

Mr. Mak also made a false statement during trial about the reason the DD(X) document was found on his brother's laptop. Mr. Mak claimed that he provided Tai Mak with an electronic copy of the document because he was unable to make a copy for himself at Power Paragon. Testimony from various Power Paragon employees refuted Mr. Mak's claim that there were not enough resources for Mr. Mak to copy the document. The witnesses explained that at a huge defense contractor like Power Paragon, there was never a shortage of computers, computer disks, or Information Technology personnel to copy a particular document.

Additionally, Mr. Mak lied during his testimony about the reason that he and his brother communicated through code word lists. Mr. Mak claimed that his niece came up with the idea to use code lists as a way of communicating about the health of Tai Mak's mother-in-law, but he could not explain why it was necessary to speak in code about the health of his elderly relative.

These three statements are not only false but they are material because they relate to the central issues of the case—whether Mr. Mak had the intent to violate the Arms Export Control Act and whether he acted as an agent of the PRC. Additionally, Mr. Mak clearly had the "willful intent" to provide false testimony based on the fact that these lies were not isolated incidents or the result of confusion; Mr. Mak repeatedly attempted to deceive the jury during the trial for the sole purpose of appearing less culpable. When he told these lies to the jury, his testimony was certain, not faltering, and he did not appear confused, mistaken, or as if he were suffering from a faulty memory. Mr. Mak's lies during the trial were demonstrable, material, and willful.

Mr. Mak's perjury was part of a larger pattern of duplicitous conduct during which Mr. Mak lied to his employer and government officials in order to further his goal of exporting defense articles to the PRC. In fact, Mr. Mak's untruths are so pervasive they can fairly be characterized as a "trail of lies" used to carry out and then cover up his scheme. First, Mr. Mak lied to gain entrance to the United States and to obtain the security clearance that provided him access to the naval technology at issue in this case. Specifically, he lied about his connections to the PRC in immigration forms used to enter the United States, omitting information about his and his wife's relatives in mainland China, which included members of the government and the Communist Party. Then he lied again about these same connections to the PRC as well as the extent of his travels in that country on his application for a national security clearance.

After his arrest, Mr. Mak lied to cover up the conspiracy. During his post-arrest interview with government agents, Mr. Mak falsely stated that he did not have any NOFORN documents in his home, when in fact a search of his home revealed many such documents.[1] Mr. Mak also told the agents that he did not know that his brother was traveling to Guangzhou in the PRC. Yet during a telephone call between Mr. Mak and Tai Mak nine days before their arrest, Mr. Mak specifically urged Tai Mak to travel to Guangzhou and Tai Mak agreed. When the agents questioned Mr. Mak about the tasking lists found in his trash-can, Mr. Mak claimed that the lists were ideas he had taken from magazines. This statement is belied by the fact that one of the lists was in typewritten Chinese, and Mr. Mak denied having the ability to type in Chinese characters and could not state who typed the list for him.

This pattern of deceit shows that Mr. Mak's perjury at trial was not an isolated incident or the result of mistake, but part of a "trail of lies" extending over the course of this conspiracy. Mr. Mak willfully lied to gain access to sensitive naval technology, to conceal his conduct after the fact, and to try to mitigate his role in the offense in front of the jury. Mr. Mak's perjury at trial was material since it was designed to mislead the jury on the central issues of the case—whether he was acting as an agent of the PRC and whether he intended to violate the Arms Export Control Act. Because all of the elements for the obstruction enhancement are met, a two-level enhancement is warranted.

Starting with the base offense level of 30, and adding a four-level enhancement for Mr. Mak's role in the offense, a two-level enhancement for his abuse of trust, and a

---

[1] The lies that Mr. Mak told to the government agents during his post-arrest interview are arguably not a sufficient basis for applying the obstruction of justice enhancement. *See* U.S.G.G. § 3D1.3, Application Note 4. The lies Mr. Mak told the government agents, however, certainly demonstrate that Mr. Mak acted with willful intent when he perjured himself at trial.

two-level enhancement for obstruction of justice, the total offense level is 38. Because Mr. Mak has no prior criminal history, he has a criminal history category of I. An offense level of 38 with a criminal history category of I corresponds to an advisory guideline sentencing range of between 235 and 293 months.

## IV. REASONS FOR HIGH-END SENTENCE

Pursuant to 18 U.S.C. § 3553(a)(2), the sentence imposed needs to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. The sentence also needs to afford adequate deterrence and protect the public from further crimes of the defendant. The sentence should also provide the defendant with correctional treatment in the most effective manner. A high-end guideline sentence of 293 months addresses all of the relevant §3553 factors.

A high-end guideline sentence is justified based in part on the serious nature of the offense and the need to protect the public from further crimes by Mr. Mak. Mr. Mak organized and led a conspiracy to pass sensitive naval technology to the PRC. He attempted to pass nuclear submarine power and propulsion quieting technologies, as well as information about the Navy's current fleet and its future plans.[2] By passing sensitive naval technology to the PRC, Mr. Mak would have enhanced the PRC's military power at the expense of that of the United States. In doing so, he would have

---

[2] There was evidence that Mr. Mak actually provided naval secrets to the PRC. A DD(X) document which contained detailed specifications about the DD(X) class destroyer was found encrypted and deleted on Tai Mak's computer. The document was encrypted two weeks before Chi Mak and his wife traveled to the PRC. There was also evidence, including Mr. Mak's own admission to government agents, that he passed information related to the power distribution system of the Aegis Spy I Radar System. The Aegis Radar System provides the U.S. with a vital technological advantage at sea.

put American lives at risk. As Admiral Hilarides testified during the trial, U.S. submarine stealth technology is one of the nation's "crown jewels," because nuclear submarines form the last line of defense in the event of a nuclear war. Nuclear submarines can only provide that defense if they can operate undetected, and they can only operate in that manner if the stealth technology at issue is kept out of the hands of potential enemies.

A high-end guideline sentence of 293 months is also necessary to protect the public from future crimes by Mr. Mak. Mr. Mak is a brilliant man who has extensive knowledge of this country's naval technology, and a sentence of this length will prevent him from sharing that knowledge with the PRC. Should Mr. Mak outlive his prison term, any defense information that he has retained will be outdated and obsolete.

A high-end guideline sentence of 293 months also provides adequate deterrence to others who would engage in Mr. Mak's crimes. The goal of deterrence is an important factor here because of the national security concerns discussed above as well as the financial impact of Mr. Mak's crimes. The government devotes a significant amount of American tax dollars to national defense. In this case, Power Paragon's portion of the first phase of the QED project alone involved more than a million dollars. This spending would be for naught if foreign countries could send their agents to steal American military technology with impunity. To properly recognize both of these concerns, the sentence imposed must send a strong message to those individuals who have access to United States military technology and would consider betraying this country.

A high-end guideline sentence of 293 months also accounts for the fact that Mr. Mak's abuse of a position of trust had particularly egregious consequences for national security, the extent of which will never be fully known. The Navy conducts research at

a sub-classified level instead of at a classified level because the cost of performing all research at classified levels would be prohibitive. As a result, the Navy relies on lesser classifications such as NOFORN, which allow for greater flexibility in performing research while still keeping military technology out of the hands of foreign governments. The consequence of this system of classification is that the Navy must rely on the integrity and loyalty of civilian engineers like Mr. Mak working on defense projects to protect the information entrusted to them. A high-end guideline sentence is warranted to account for Mr. Mak's betrayal of this trust through the misuse of his employment position and national security clearance.

In terms of mitigating factors, Mr. Mak argues that he is entitled to a downward departure or variance from the advisory guideline range offered by the U.S. Probation Officer based on several personal characteristics, such as his lack of criminal history, his age, and the fact that he has already lost the two things he valued most—his career and his wife, who will be deported to the PRC. Mr. Mak also argues that he deserves a downward departure or variance because he lived a productive life developing technology for the United States and because he was well-regarded by his colleagues and neighbors. Based on these purportedly mitigating factors, Mr. Mak argues that a sentence of ten years is appropriate.

Rather than finding that these factors merit a downward departure, the Court finds that Mr. Mak's lack of criminal history, good reputation in the community and professional accomplishments contributed to his ability to carry out and conceal his crimes over an extended period of time. Were Mr. Mak not such a well-regarded engineer and previously upstanding citizen, the government and his employer never would have entrusted him with and given him access to sensitive naval technology. But for his good reputation and covert behavior, Mr. Mak never could have committed his crimes against the United States.

Moreover, the ten year sentence recommended by Mr. Mak is inconsistent with the jury's verdict, which convicted Mr. Mak on five counts with a total statutory maximum of forty-five years. Finally, Mr. Mak's recommended sentence disregards the Guidelines, which establish an applicable sentencing range of between 235 and 293 months, and it does not achieve the sentencing objectives of § 3553.[3]

## V.   CONCLUSION

For all of the foregoing reasons, the Court sentences Mr. Mak to a custodial term of 293 months.

DATED:   March 24, 2008

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

---

[3] With respect to the government's request for an upward variance, the Court agrees that the factors identified by the government warrant a high end guideline sentence but disagrees that those same factors justify an upward variance beyond a high-end guideline sentence. A sentence of 293 months is a fair and just sentence that addresses the § 3553 sentencing factors.